IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

C.D. ACQUISITION HOLDINGS, INC.,
        Plaintiff,                                 05cv1719
     v.                                        **ELECTRONICALLY FILED**

ROBERT E. MEINERSHAGEN,
DOUGLAS B. BAUMGARTNER,
*and, as transferees*,
HELEN MEINERSHAGEN,
WASHBURN ENDOWMENT ASSOCIATION,
H & B INVESTMENT, LP,
MARGARET BAUMGARTNER,
JAS LLC, TECUMSEH PROPERTIES, LP,
and BAUMGARTNER ENTERPRISES, INC.,
        Defendant.

## MEMORANDUM OPINION

**January 22, 2007**

    **Introduction.**

    Before the Court are several motions: (i) the Renewed Motion to Dismiss for Lack of Personal Jurisdiction (doc. no. 69) filed on behalf of defendants Douglas B. Baumgartner, Margaret Baumgartner, JAS LLC, Tecumseh Properties, LP, and Baumgartner Enterprises, Inc.; (ii) the same defendants' Renewed Motion to Transfer or Dismiss for Improper Venue or to Change Venue (doc. no. 71); and (iii) plaintiff CD Acquisition Holdings, Inc.'s Motion for Partial Summary Judgment (doc. no. 76) based upon discovery permitted by the former District Judge assigned to this case for the limited purpose of resolving the jurisdictional dispute.[1]

---

[1] On March 14, 2006, District Judge M. Hardiman denied these defendants' previous motion to dismiss and/or to transfer without prejudice, and permitted limited discovery addressed to this Court's personal jurisdiction over the remaining defendants, Douglas B. Baumgartner and his alleged transferees, Margaret Baumgartner, JAS LLC, Tecumseh Properties, LP, and Baumgartner Enterprises, Inc.

**The Complaint.**

The Complaint alleges the following facts regarding the Baumgartner related defendants.[2] Plaintiff CD Acquisition is a Delaware corporation with its principal place of business in Pittsburgh, Pennsylvania. It is a wholly-owned subsidiary of Fisher Scientific International, Inc., a Pittsburgh, Pennsylvania corporation, formed for the sole purpose of facilitating Fisher Scientific's acquisition of Columbia Diagnostics, Inc., a distributor of laboratory supplies to the health care industry. Defendants Robert E. Meinershagen and Douglas B. Baumgartner, along with one other man, were the sole shareholders and owners of Columbia.

On January 21, 1999, CD Acquisition purchased the assets of Columbia pursuant to an Asset Purchase and Sale Agreement between CD Acquisition, Columbia and the three individual shareholders. The Agreement required that any disputes arising from the transaction would be presented to the American Arbitration Association in Pennsylvania, and the signatories agreed to jurisdiction in Pennsylvania courts.

All of the Meinershagen defendants are citizens of New Mexico, with the exception of Washburn Endowment Association, a citizen of Kansas. All of the Baumgartner defendants are citizens of Tennessee. Complaint, ¶¶ 8-12. The Complaint claims federal court jurisdiction on the basis of diversity of citizenship pursuant to 28 U.S.C. § 1332, and claims venue in the Western District of Pennsylvania on the basis of the Agreement and subsequent litigation in this district which resulted in the judgment entered by the Court of Common Pleas of Allegheny County that is the focus of this lawsuit.

---

[2] Robert E. Meinershagen and his transferees, Helen Meinershagen, Washburn Endowment Association, and H & B Investment, LP, have all settled with plaintiff and have been dismissed from the case.

Shortly after consummation of the Agreement [in fact, the day after], plaintiff became aware that Columbia was in substantial breach of contract with two government agencies, the Department of Veteran's Affairs and the General Services Administration, involving fake invoices, and plaintiff alleged that by failing to disclose the potential liability from these contract violations, Columbia and the prior owners were in material breach of their Agreement with CD Acquisition. Complaint, ¶ 2, 21-22. CD Acquisition notified Columbia and the prior owners immediately.

To make a long story short, the starting point of this lawsuit was probably on December 1, 2003, when, following hearings in Pittsburgh in August 2003, AAA Arbitrator Roslyn M. Litman issued an award in favor of CD Acquisition against Columbia and its prior owners, jointly and severally, in the amount of $1,366,984.60. Complaint, ¶¶ 32-34.  When defendants did not voluntarily pay, CD Acquisition entered the AAA award as a judgment in the Court of Common Pleas of Allegheny County on April 19, 2004, and when defendants still would not pay, CD Acquisition instituted this lawsuit claiming that Baumgartner and Meinsershagen had fraudulently transferred virtually all of their assets to the named transferees in the suit in order to avoid the judgment that had been entered in the Court of Common Pleas of Allegheny County, Pennsylvania.  Complaint, ¶¶ 35-42.

Count I states claims against the settling Meinershagen defendants under the Pennsylvania Uniform Fraudulent Transfers Act ("PUFTA"), 12 Pa.C.S. § 5101(b). Complaint, ¶¶ 44-59.  Count II states PUFTA claims against the remaining Baumgartner defendants. Complaint, ¶¶ 60-75.  Specifically, the Complaint alleges that Douglas Baumgartner transferred virtually all of his assets (rendering him insolvent)  following notification of CD Acquisition's

claims against him to his wife, Margaret, and to the Tennessee business entities JAS, Tecumseh, and BEI, not in exchange for assets of reasonably equivalent value. Complaint, ¶¶ 68-71.  The Complaint further alleges that the transfers were intended to, and in fact did, hinder, delay and avoid the judgment entered in the Court of Common Pleas of Allegheny County, Pennsylvania, in violation of the PUFTA, 12 Pa.C.S. §§ 5104 and 5105, and that they should be voided under section 5107 of that Act. Complaint, ¶¶ 72-75.  The Complaint seeks equitable relief, including setting aside the allegedly fraudulent transfers, the appointment of a receiver to take charge of Douglas Baumgartner's property, authorization for CD Acquisition to attach, levy and/or execute on the transferred property to pay what remains unpaid on the judgment, fees and costs.

**Renewed Motion to Dismiss for Lack of Personal Jurisdiction**.

In their renewed motion to dismiss for lack of personal jurisdiction, Douglas Baumgartner's transferees assert that this Court has no jurisdiction to entertain plaintiff's claims against them because they have had no forum-related activities in connection with the cause of action, and lack the minimum contacts required before a state may, consistent with due process, exercise jurisdiction over citizens of other states.  The Baumgartner business entities also insist that they are separate, independent corporate "persons" and that the forum-related activities of an officer or employee (namely, Douglas Baumgartner) cannot be imputed to the business entities.

**Rule 12(b)(2) Standards.**

**In general.**  Once a defendant has raised a lack of personal jurisdiction defense, the burden shifts to the plaintiff to prove that jurisdiction exists in the forum state. *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 257 (3d Cir. 1998); *Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1302 (3d Cir. 1996).  A court must construe all facts in the light most favorable to the plaintiff

when determining whether personal jurisdiction exists. *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002).

Nonetheless, a plaintiff may not rest solely on the pleadings to satisfy its burden. *Carteret Sav. Bank, F.A. v. Shushan*, 954 F.2d 141, 146 (3d Cir. 1992). Rather, a plaintiff must demonstrate "with reasonable particularity" contacts between the defendant and the forum sufficient to support a prima facie case in favor of the exercise of personal jurisdiction by the forum state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1986); *Mellon Bank v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992); *Carteret Sav. Bank*, 954 F.2d at 146. Thus, a Rule 12(b)(2) motion "requires resolution of factual issues outside the pleadings, *i.e.*, whether in personam jurisdiction actually lies." *Clark v. Matsushita Electric Indus. Co., Ltd.*, 811 F.Supp 1061, 1064 (MD. Pa. 1993), *quoting Time Share Vacation Club v. Atlantic Resorts, Ltd.*, 735 F.3d 61, 66 n. 9 (3d Cir. 1984).

Merely re-stating the allegations in the pleadings does not enable a plaintiff to withstand a Rule 12(b)(2) motion. *Time Share Vacation Club*, 735 F.2d at 66. "At no point may a plaintiff rely on the bare pleadings alone in order to withstand a defendant's Rule 12(b)(2) motion to dismiss for lack of jurisdiction; once the motion is made, the plaintiff must respond with actual proofs not mere allegations." *Eagle Computer Assoc. v. Chesapeake Software Serv., Inc.*, 1999 WL 1030441, *1 (E.D. Pa. 1999) (citations omitted).

In this case, a substantial quantum of evidence has been adduced pursuant to Court order permitting discovery directed to this Court's jurisdiction over the remaining defendants, and both sides have produced substantial evidence to support their positions on defendants' motion to dismiss. The jurisdictional issue is ripe and has been thoroughly fleshed-out, and this Court may

now make a fully informed decision as to its jurisdiction. In light of all of the evidence and the governing jurisdictional standards, there is little doubt that this Court has jurisdiction over all Tennessee defendants.

**In Pennsylvania.** The standards for determining jurisdiction of Pennsylvania courts over out-of-state defendants have been oft repeated and are so well-established that the minutiae and nuances of the laws need not be recited in full. In truncated form (i.e., as most pertinent to the disputed jurisdictional matters raised herein), the standards are as follows.

The starting point is Fed.R.Civ.P. 4(e), pursuant to which a federal court may assert personal jurisdiction over a nonresident to the extent allowed by the law of the forum state in which the federal court sits. *Remick v. Manfredi*, 238 F.3d 248, 255 (3d Cir. 2001); *Dayhoff, Inc.*, 86 F.3d at 1301; *Farino*, 960 F.2d at 1221. Courts must resolve the question of personal jurisdiction "based on the circumstances that the particular case presents." *Brooks v. Bacardi Rum Corp.*, 943 F.Supp. 559, 562 (E.D.Pa. 1996) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 485 (1985)). Due process, then, is an individualized inquiry. *Mellon Bank*, 960 F.2d at 1224-25. Consistent with the requirements of due process, we must ensure that a defendant is subjected to personal jurisdiction only where her activities have been purposefully directed at residents of the forum, or otherwise availed herself of the privilege of conducting activities there. *Burger King*, 471 U.S. at 472; *Hanson v. Denckla*, 357 U.S. 235 (1958).

Thus, the law of Pennsylvania provides the basis for determining whether this Court may exercise personal jurisdiction over defendants. Pennsylvania's "Bases of Jurisdiction and Interstate and International Procedure" are set out in 42 Pa.C.S. §§ 5301 - 5308 (Subchapter A, General Provisions), and 42 Pa.C.S. §§ 5321 - 5329 (Subchapter B, Interstate and International

6

Procedure). "General jurisdiction" over "Persons," "Corporations," and partnerships, professional and unincorporated associations and other similar entities is governed by 42 Pa.C.S. § 5301, which states the statutory bases upon which the courts of Pennsylvania may exercise general, personal jurisdiction over a defendant. Plaintiff does not claim that Pennsylvania courts have general jurisdiction; CD Acquisition claims, rather, that Pennsylvania has specific jurisdiction.

Pennsylvania's "Uniform Interstate and International Procedure Act," 42 Pa.C.S. §§ 5322 - 5329, provides for the exercise of specific jurisdiction over persons outside the Commonwealth. Section 5322(a) authorizes tribunals in Pennsylvania to "exercise personal jurisdiction over a person . . . who acts directly or by an agent, *as to a cause of action or other matter arising from such person . . . .*" committing or performing any of ten enumerated acts, including: "(4) Causing harm or tortious injury in this Commonwealth by an act or omission outside this Commonwealth." 42 Pa.C.S. § 5322(a)(4).

In addition to these ten enumerated acts which form the basis for specific jurisdiction, section 5322 provides a "catch all" basis:

> (b) **Exercise of full constitutional power over nonresidents**. – *In addition to the provisions of subsection (a)* the *jurisdiction* of the tribunals of this Commonwealth *shall extend* to all persons who are not within the scope of section 5301 (relating to persons) to *the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact* with this Commonwealth *allowed under the Constitution* of the United States.
>
> (c) **Scope of jurisdiction**. – When jurisdiction over a person is based solely upon this section, *only a cause of action or other matter arising from acts enumerated in subsection (a), or from acts forming the basis of jurisdiction under subsection (b)*, may be asserted against him.

42 Pa.C.S. § 5322(b)-(c) ( emphasis added).

Plaintiff claims specific jurisdiction over defendants based upon their allegedly fraudulent tortious acts committed outside of Pennsylvania but causing harm within Pennsylvania. Defendants of course, deny they committed any fraudulent acts, and argue that, even if they did, any such conduct occurred strictly out of state, and they could not have foreseen any harmful consequences in Pennsylvania. Therefore, defendants assert that their conduct does not satisfy the "tort out/ harm in" basis for specific jurisdiction. The Court disagrees with defendants.

In *IMO Indus. Inc. v. Kiekert AG*, 155 F.3d 254 (3d Cir. 1998), Chief Judge Becker set forth the following principles that control in this case:

> [T]he Supreme Court [in *Calder v. Jones*, 465 U.S. 783 (1984)] found personal jurisdiction to be proper over nonresident defendants that committed an intentional tort outside the forum, the unique effects of which caused damage to the plaintiff within the forum. We believe that for *Calder* to apply, the plaintiff must allege facts sufficient to meet a three-prong test. First, the defendant must have committed an intentional tort. Second, the plaintiff must have felt the brunt of the harm caused by that tort in the forum, such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of the tort. Third, the defendant must have expressly aimed his tortious conduct at the forum, such that the forum can be said to be the focal point of the tortious activity.

*IMO Indus.*, 155 F.3d at 256.

In this case, there is no question that (assuming the facts of the complaint to be true at this stage of the proceedings) defendants committed an intentional tort, namely fraudulent conveyances to avoid a court judgment, and that the harm was felt in Pennsylvania by the Pennsylvania plaintiff, who holds the presently unenforceable Pennsylvania judgment. The dispute herein hones in on the third prong of the tort out/ harm in jurisdictional hook: did defendants expressly aim their "tortious conduct at the forum, such that the forum can be said to

be the focal point of the tortious activity."

Although, as defendants correctly proclaim, none of their physical or metaphysical conduct took place *in* Pennsylvania, their conduct certainly was directed *at* Pennsylvania. The fraudulent transfer of assets from judgment debtor Douglas Baumgartner to his transferees, through a series of transactions successfully designed to insulate his assets from the reach of Pennsylvania creditors holding a Pennsylvania judgment, could *only* be aimed at Pennsylvania.

Where a person or corporation in Tennessee knowingly accepts a fraudulent transfer of assets in Tennessee from a Tennessee judgment debtor, which transfer is intended to defeat a judgment that lies in Pennsylvania -- indeed, was entered on a claim that was adjudicated, decided, rendered, reduced to judgment and filed on the judgment index in the Court of Common Pleas of Allegheny County, Pennsylvania, as the complaint herein alleges -- the harm from such an intentional tort *could only be felt in Pennsylvania,* and nowhere else! See, e.g. *Walsh v. Alarm Security Group, Inc.*, 157 F.Supp.2d 501, 508 (E.D.Pa. 2001) ("Defendant's fraud and Plaintiff's resulting injury occurred in Pennsylvania. Because Defendant deliberately sent Plaintiff to Pennsylvania and directed him to perform services there, Defendant had knowledge that Plaintiff was to be paid for those services in Pennsylvania and that its failure to pay would cause harm to Plaintiff in Pennsylvania. Thus, it can be determined that Defendant aimed its tortious conduct at Pennsylvania such that it can be said to be the focal point of the harm, and the third prong is satisfied."); *Leonard A. Feinberg, Inc. v. Central Asia Capital Corp., Ltd.*, 936 F.Supp. 250 (E.D.Pa. 1996) (allegations that Hong Kong creditor of Hong Kong supplier misrepresented to Pennsylvania importer that funds advanced to supplier would be used to purchase raw materials for importer, when it knew supplier would use the monies to pay down its

indebtedness to creditor, prima facie satisfied Pennsylvania's long-arm statute in suggesting that creditor directed fraud at Pennsylvania and perpetrated fraudulent acts which injured a party within Pennsylvania); *Techno Corp. v. Dahl Assoc., Inc.*, 535 F.Supp. 303, 307 (W.D.Pa. 1982) ("In this case there is no dispute that Pennsylvania's long-arm statute would confer jurisdiction over these defendants. These non-resident defendants are accused of taking actions in Ohio which resulted in a[n intentional] tortious injury to a Pennsylvania corporation. In such a case Pennsylvania law clearly provides for the exercise of personal jurisdiction. See, 42 Pa.C.S.A. § 5322(a)(4).").

Of course, Pennsylvania's statutory bases for asserting jurisdiction must comport with the constitutionally mandated "minimum contacts" test, and with respect to intentional torts such as fraud and 42 Pa.C.S. § 5422(b)(4), the United States Court of Appeals for the Third Circuit has adopted the "effects test" to determine whether minimum contacts exist between a defendant and the forum. See *IMO Indus.*, 155 F.3d 254 (relying on *Calder*). It was not only foreseeable that defendants' conduct in this case would impact and harm a Pennsylvania citizen, such conduct explicitly targeted the Pennsylvania litigation and judgment that eventually would be or had already been entered in the state courts of Pennsylvania. It was *inevitable* that any harm would be felt uniquely in Pennsylvania, which, assuming the truth of plaintiff's allegations for purposes of deciding this motion to dismiss, was the focal point of the fraudulent transfers.

The Court has no hesitancy holding that the assertion of jurisdiction by Pennsylvania courts pursuant to section 5322(a)(4) of its long arm statute, 42 Pa.C.S. §5322(a)(4), satisfies the "minimum contacts" test and due process concerns.

Douglas Baumgartner consented to suit in Pennsylvania and does not challenge this

Court's jurisdiction over him, but his transferees do.  Plaintiff proffers ample evidence, however, to show that this Court has jurisdiction over the transferees, including Baumgartner's answers to interrogatories.

Margaret Baumgartner was the recipient of not-for-equivalent-value transfers of assets in 2001 and 2003, and she acknowledged in her deposition that she was aware of her husband's potential liability for breach of the Agreement in early 2001.  Her knowing participation in the alleged scheme to defraud qualifies her for the tort out/ harm in basis for exercise of jurisdiction.

As to the Baumgartner business entities, Douglas Baumgartner's Answers to Interrogatories, Exhibit K to Brief in Opposition to Defendants' Motion to Dismiss (doc. no. 76) (among other evidence) shows that each of these entities was formed *after* CD Acquisition had obtained its award in arbitration and entered it in the Court of Common Pleas of Allegheny County:  Baumgartner funded and begat JAS in February, 2004; which funded and begat Tecumseh in March 2004; which funded and begat BEI in December 2004; all with the intent and effect of avoiding the Pennsylvania judgment (allegedly, but the Court assumes the truth of these averments for purposes of this motion to dismiss).

All this funding and begetting left Douglas Baumgartner without any assets upon which CD Acquisition could execute on its judgment.  Inasmuch as his answers to interrogatories and other evidence shows that Douglas Baumgartner owns 99% of the shares of JAS and is its Chief manager, that JAS holds 98% of Tecumseh and is its general partner, with Margaret and Douglas Baumgartner holding 1% apiece, and that BEI was funded with assets of Margaret Baumgartner and JAS and Douglas Baumgartner is an officer and employee of BEI, this Court finds that the Baumgartner business entities are alter egos of Douglas Baumgartner, and that their very

existence was intended to cause harm in Pennsylvania by shielding his assets from his creditors holding the Pennsylvania judgment.

Accordingly, the Baumgartner transferees, Mrs. Baumgartner and the corporate alter egos of Douglas Baumgartner, are subject to this Court's specific jurisdiction under Pennsylvania's long arm statute, 42 Pa.C.S. § 5322(a)(4), and have the requisite minimum contacts with Pennsylvania to satisfy any due process concerns. The Court will therefore deny the motion to dismiss.

**Renewed Motion to Transfer or Dismiss for Improper Venue or to Change Venue.**

A civil action predicated only on diversity of citizenship may be brought "only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought." 28 U.S.C. § 1391(a). Given the foregoing discussion, the Court finds that venue is proper in either Tennessee or Pennsylvania. (In fact, CD Acquisition has filed a precautionary lawsuit in Tennessee in the event that this Court would have decided that Pennsylvania could not exercise jurisdiction, and that case has been stayed by the District Court pending resolution of the instant motions.) The question becomes, then, whether this Court should exercise its discretion to transfer the suit to Tennessee.

Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it

might have been brought." In *Jumara v. State Farm Insurance Co.*, 55 F.3d 873, 879 (3d Cir. 1995), the United States Court of Appeals for the Third Circuit outlined the private and public interests to be considered when determining "whether on balance the litigation would more conveniently proceed and the interest of justice be better served by transfer to a different forum." The private interests include: (1) "plaintiff's forum preference"; (2) defendant's forum preference; (3) "whether the claim arose elsewhere"; (4) "the convenience of the parties as indicated by their relative physical and financial condition"; (5) "the convenience of witnesses - but only to the extent that the witnesses may actually be unavailable for trial in one of the fora"; and (6) "the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum)." *Id*.

The public interests include: (1) "the enforceability of the judgment"; (2) "practical considerations that could make the trial easy, expeditious, or inexpensive"; (3) "the relative administrative difficulty in the two fora resulting from court congestion"; (4) "the local interest in deciding local controversies at home"; (5) "the public policies of the fora"; and (6) "the familiarity of the trial judge with the applicable state law in diversity cases." *Id*. at 879-80.

The Court has carefully considered all of these factors, and under all of the circumstances, finds that, on balance of private and public interests, Pennsylvania is the best situated and most convenient forum for this lawsuit to proceed.

Douglas Baumgartner consented to be sued in Pennsylvania and, in fact, was sued in Pennsylvania and the dispute litigated to judgment in Pennsylvania. The Tennessee witnesses have already been deposed, and plaintiff evidently believes the existing record is adequate to prove their case under the PUFTA since CD Acquisition has submitted a motion for

13

partial summary judgment relying on those depositions and other existing evidence developed in the proceedings on the motion to dismiss. Pennsylvania's interests are paramount in this case, as the judgment that remains unsatisfied reposes in the Court of Common Pleas of Allegheny County, Pennsylvania.

For the foregoing reasons, venue of this proceeding will remain in the United States District Court for the Western District of Pennsylvania.

**Plaintiff's Motion for Partial Summary Judgment.**

Although summary judgment motions are not due until on or before February 12, 2007, plaintiffs have filed a Motion for Partial Summary Judgment, apparently satisfied that the discovery gathered for the disposition of the motion to dismiss based on lack of jurisdiction is adequate to prove their case, at least as to liability. Defendants have filed their response and Memorandum in Opposition to Plaintiff's Motion for Partial Summary Judgment (doc. no. 77), although their response and opposition brief is not due until February 22, 2007.

As defendants correctly point out, the discovery period expires on January 22, 2007. Although CD Acquisition is certainly entitled to file any motion for summary judgment before the final due date, the Court agrees with defendants that it is somewhat premature to entertain this motion while the discovery period is open, and that defendants should have full opportunity to present any defenses that might be supported through discovery.

Accordingly, the Court will deny the Motion for Partial Summary Judgment at this time, without prejudice for plaintiff to renew said motion following the close of the discovery period, on or before February 12, 2007. Defendants will thereafter have until February 22, 2007 to file their Response and Memorandum in Opposition to the Motion for Partial Summary Judgment.

An appropriate order will be entered.


s/ Arthur J. Schwab
Arthur J. Schwab
United States District Judge


cc:     All counsel of record